[Crim. No. 18071. First Dist., Div. Four. Oct. 2, 1978.]

In re CARL LEE GRAY on Habeas Corpus.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, John

T. Murphy and Kenneth C. Young, Deputy Attorneys General, for Appellant.

Frank W. Dice, Public Defender, Miguel A. Hernandez, Deputy Public Defender, Quin Denvir, State Public Defender, Clifton R. Jeffers, Chief Assistant State Public Defender, Philip A. Schnayerson and Mark Fogelman, Deputy State Public Defenders, for Respondent.

## OPINION

**CALDECOTT, P. J.**—The question presented on this appeal is whether the Community Release Board may, pursuant to Penal Code section 1170.2, subdivision (b), impose additional penalty for multiple offenses when the trial court, pursuant to the Indeterminate Sentence Law, had ordered the sentences to be served concurrently. We hold that the board may impose the additional penalty.

In April 1975, petitioner Carl Lee Gray, pleaded guilty to robbery in the first degree in case No. CR-31247. It was alleged in the information that his codefendant was armed with and did use a deadly weapon, to wit, a handgun, in the commission of the offense. Petitioner, on the same day, also pleaded guilty to a second charge of robbery in the first degree in case No. CR-31543. The information alleged that petitioner was armed with and did use a deadly weapon, to wit, a pistol, in the commission of the offense.

In each of these cases petitioner was sentenced to state prison for the term prescribed by law, sentences to run concurrently. Under the Indeterminate Sentence Law (ISL), first degree robbery was punishable by imprisonment in the state prison for a term of five years to life. (Former Pen. Code, § 213.)

On August 16, 1977, the Community Release Board (CRB) determined that a term longer than that specified in the retroactive application of the Determinate Sentencing Act (DSA) (Pen. Code, § 1170.2, subd. (a)) would be appropriate. Therefore a serious offender hearing was ordered pursuant to Penal Code section 1170.2, subdivision (b).

As a result of that hearing the base term for robbery under the DSA in case No. CR-31247 was enhanced by 12 months because petitioner's crime partner was armed with a firearm in the commission of that offense. An additional 12-month period was added to the base term

because of petitioner's second conviction for robbery in the first degree in case No. CR-31543. With respect to the latter enhancement, the CRB explained: "The prisoner has been convicted of multiple offenses and has been given a term to be served concurrently with the term for the base offense. The Community Release Board has determined that crimes for which a serious offender was sentenced concurrently shall be treated as consecutively [sic] as provided in Penal Code § 1170.1 consistent with the intent of the Legislature expressed in Penal Code section 1170.2."

Petitioner's indeterminate sentence parole date had been set at January 13, 1980, with a primary discharge date of November 13, 2001. Under Penal Code section 1170.2, subdivision (b), petitioner was given a determinate sentence release date tentatively set at January 28, 1979.[1]

In January 1978, petitioner filed a petition for writ of habeas corpus challenging the CRB's calculation of a term parole date pursuant to Penal Code section 1170.2, subdivision (b). The matter came on for hearing in February 1978. The court ruled that with respect to the additional 12 months imposed for arming, the petition was denied. However, with respect to the additional 12 months imposed as a consecutive sentence for the second robbery conviction, the provision of section 1170.2, subdivision (b), of the Penal Code authorizing the CRB to impose an additional period of time due to the number of crimes for which the prisoner was convicted, "does not allow the Board to completely disregard a judicial determination especially where such a determination is an act of leniency by the sentencing Court." Accordingly, the CRB was directed to conduct a second serious offender hearing pursuant to Penal Code section 1170.2, subdivision (b), to redetermine petitioner's term under guidelines which are not inconsistent with the court's decision.

The People have appealed from the order granting writ of habeas corpus.

■ The People contend that, in computing the term of imprisonment pursuant to Penal Code section 1170.2, for a prisoner sentenced under the ISL, the CRB may impose an additional period of time due to the number of crimes for which the prisoner was convicted, notwithstanding the fact that the trial court ordered the sentences to run concurrently.

[1]The base term of 36 months for one of the robbery convictions was increased by 24 months as discussed above. A credit of 5 months and 18 days was deducted, giving a maximum determinate sentence release date of November 13, 1979. Possible good time credits (289 days) were then deducted to arrive at the January 28, 1979 minimum release date.

Under the ISL, adopted in 1917, the Legislature prescribed both the minimum and maximum terms for each offense punishable by imprisonment in the state prison. The trial court did not specify the length of imprisonment, but simply sentenced the defendant for the term "prescribed by law." (Former Pen. Code, § 1168.) This sentence was deemed to be a sentence for the maximum term. (*In re Lee* (1918) 177 Cal. 690, 693 [171 P. 958].) The Adult Authority or its predecessor agencies determined and redetermined within those very wide statutory ranges, the length of term the offender would actually be required to serve. (*In re Lynch* (1972) 8 Cal.3d 410, 415, 417 [105 Cal.Rptr. 217, 503 P.2d 921].) In making such a determination, the authority exercised a broad discretion (*In re Troglin* (1975) 51 Cal.App.3d 434, 440 [124 Cal.Rptr. 234]); taking into consideration such factors as the nature of the prisoner's offense, his felony conviction record, the probability of his reformation, and the interests of public security. (*Id.*) Any release date earlier than the maximum sentence was supposed to reflect a recognition of the prisoner's efforts at rehabilitation. (*People* v. *Superior Court (Gonzales)* (1978) 78 Cal.App.3d 134, 141 [144 Cal.Rptr. 89].) The Supreme Court consistently sustained the constitutionality of the ISL against challenges that it infringed the doctrine of separation of powers. (*In re Lee, supra,* 177 Cal. 690 at p. 693; see also *In re Wells* (1950) 35 Cal.2d 889, 893 [221 P.2d 947]; *In re Larsen* (1955) 44 Cal.2d 642, 647-648 [283 P.2d 1043]; *In re Lynch, supra,* 8 Cal.3d 410 at p. 417.)

Effective July 1, 1977, California repealed its indeterminate sentencing law. On that date, the Uniform Determinate Sentencing Act of 1976, as amended by statutes in 1977, became operative. The DSA returns the sentencing power to the courts, but requires sentencing judges to impose the "middle" of three statutorily determined lengths of incarceration for a crime, unless there are "circumstances in aggravation or mitigation," in which case the longer or shorter period will be imposed. (Pen. Code, § 1170.2, subd. (b); see *Way* v. *Superior Court* (1977) 74 Cal.App.3d 165, 170 [141 Cal.Rptr. 383].) A sentence may also be increased if consecutive sentences are imposed (Pen. Code, § 1170.1, subd. (a)),[2] or if certain "enhancements" are pleaded and proved. (See Pen. Code, §§ 667.5, 12022, subds. (a) and (b); 12022.5; 12022.6, subds. (a) and (b); 12022.7.) Certain limitations in the number of enhancements and the total sentence which may be imposed are specified in Penal Code seciton 1170.1.

---

[2]One-third of the middle term of each additional offense is added to the sentence; more if violent offenses are involved.

In order to achieve total uniformity, the Legislature instructed the CRB, the successor to the Adult Authority, to fix terms for those indeterminately sentenced in accordance with guidelines set forth in Penal Code section 1170.2. (See *Way* v. *Superior Court, supra,* 74 Cal.App.3d at p. 169.) Subdivision (a) of section 1170.2 directs the CRB to determine what sentence an ISL offender would have received had he been sentenced under the DSA (disregarding good time credits but including enhancements).[3] Subdivision (b) then states that if this calculation results in a term which would end before a parole release date already set by the Adult Authority, or if a parole release date has not yet been set, the CRB "shall establish the prisoner's parole date . . . on the date calculated under subdivision (a) unless at least two of the members of the Community Release Board . . . determine that . . . the prisoner should serve a term longer than that calculated in subdivision (a). . . ."[4]

---

[3]Penal Code section 1170.2, subdivision (a) provides: "(a) In the case of any inmate who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1170 if he had committed it after July 1, 1977, the Community Release Board shall determine what the length of time of imprisonment would have been under Section 1170 without consideration of good-time credit and utilizing the middle term of the offense bearing the longest term of imprisonment of which the prisoner was convicted increased by any enhancements justified by matters found to be true and which were imposed by the court at the time of sentencing for such felony. Such matters include: being armed with a deadly or dangerous weapon as specified in Section 211a, 460, 3024, or 12022 prior to July 1, 1977, which may result in a one-year enhancement pursuant to the provisions of Section 12022; using a firearm as specified in Section 12022.5 prior to July 1, 1977, which may result in a two-year enhancement pursuant to the provisions of Section 12022.5; infliction of great bodily injury as specified in Section 213, 264, or 461 prior to July 1, 1977, which may result in a three-year enhancement pursuant to the provisions of Section 12022.7; any prior felony conviction as specified in any statute prior to July 1, 1977, which prior felony conviction is the equivalent of a prior prison term as defined in Section 667.5, which may result in the appropriate enhancement pursuant to the provisions of Section 667.5; and any consecutive sentence."

[4]Penal Code section 1170.2, subdivision (b) provides: "(b) If the calculation required under subdivision (a) is less than the time to be served prior to a release date set prior to July 1, 1977, or if a release date had not been set, the Community Release Board shall establish the prisoner's parole date, subject to subdivision (d), on the date calculated under subdivision (a) unless at least two of the members of the Community Release Board after reviewing the prisoner's file, determine that due to the number of crimes of which the prisoner was convicted, or due to the number of prior convictions suffered by the prisoner, or due to the fact that the prisoner was armed with a deadly weapon when the crime was committed, or used a deadly weapon during the commission of the crime, or inflicted or attempted. to inflict great bodily injury on the victim of the crime, the prisoner should serve a term longer than that calculated in subdivision (a), in which event the prisoner shall be entitled to a hearing before a panel consisting of at least two members of the Community Release Board as provided for in Section 3041.5. The Community Release Board shall notify each prisoner who is scheduled for such a hearing within 90 days of July 1, 1977, or within 90 days of the date the prisoner is received by or returned to the custody of the Department of Corrections, whichever is later. The hearing shall be held before April 1, 1978, or within 120 days of receipt of the prisoner, whichever

Section 1170.2, subdivision (b), requires that a longer term be justified on the basis of certain objective facts: (1) the number of crimes of which the prisoner was convicted; (2) the number of prior convictions; (3) the fact that the prisoner was armed; or (4) that he used a deadly weapon; or (5) that he inflicted great bodily harm on the victim. That objective justification is required is further implied by the due process guarantees written into the law, including an inmate's right to counsel, and to be " 'informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated.' " (*Way* v. *Superior Court, supra,* 74 Cal.App.3d 165, 173.) "But having thus seemingly narrowed the board's discretion, the Legislature ends on a broad discretionary note: 'In fixing a term under this section the board shall be guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, and further, the board shall be guided by the following finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration.' " (*Id.*)

Given the discretion granted by this latter clause, and in view of the legislatively expressed desire for uniformity in the treatment of offenders, it is apparent that the Legislature did not intend to prevent the CRB from taking into consideration the number of convictions suffered by a defendant in computing the length of an indeterminate sentence, even

---

is later. The board may by resolution extend this period an additional 90 days. However, such resolution shall have no force or effect if vetoed by resolution of either house of the Legislature. It is the intent of the Legislature that the hearings provided for in this subdivision shall be accomplished in the most expeditious manner possible. At such hearing the prisoner shall be entitled to be represented by legal counsel, a release date shall be set, and the prisoner shall be informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated. In fixing a term under this section the board shall be guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, and further, the board shall be guided by the following finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration."

Subdivision (c) of section 1170.2, however, provides: "(c) Nothing in this section shall be deemed to keep an inmate in the custody of the Department of Corrections for a period of time longer than he would have been kept in its custody under the provisions of law applicable to him prior to July 1, 1977. Nothing in this section shall be deemed to require the release of an inmate sentenced to consecutive sentences under the provisions of law applicable to him prior to July 1, 1977, earlier than if he had been sentenced to concurrent sentences."

where such sentences were ordered to run concurrently. Under the DSA, discretion as to whether to increase the base term for multiple convictions is addressed to the trial court, rather than, as under the ISL, the Adult Authority. Thus, any attempt by the CRB to recalculate an indeterminate sentence by reference to the DSA requires that the CRB consider the fact of multiple convictions, which under the DSA would be considered by the trial court. Any other method would result in a windfall to the inmate.

Furthermore, section 1170.2, subdivision (b), specifically authorizes the CRB to increase the base term due to the number of crimes of which the defendant was convicted. At the same time, subdivision (a) of section 1170.2, provides that the CRB shall include in the base term any enhancement justified by any consecutive sentence imposed by the court at the time of sentencing. In view of this requirement in subdivision (a), the provision in subdivision (b) regarding multiple convictions would be mere surplusage if limited to cases in which indeterminate sentences for multiple convictions were ordered to run consecutively. ■ It is a fundamental rule that construction of a statute making some words surplusage is to be avoided. (*Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 228-229 [111 Cal.Rptr. 398].)

■ Petitioner, however, argues that determination by the CRB increasing the base term due to multiple convictions would violate the separation of powers doctrine set forth in article III, section 3, of the California Constitution. He points out that the CRB, like the Adult Authority, is an administrative agency which cannot exercise judicial authority. (See *In re Fain* (1976) 65 Cal.App.3d 376, 389 [135 Cal.Rptr. 543].) Since determination of whether a second sentence shall be consecutive or concurrent is a judicial function (Pen. Code, § 669), he argues that the CRB exceeded its jurisdiction by increasing his base term due to multiple convictions. (See *In re Sandel* (1966) 64 Cal.2d 412, 416 [50 Cal.Rptr. 462, 412 P.2d 806].)

This contention ignores the fact that recalculation by the CRB of an ISL offender's term of imprisonment pursuant to Penal Code section 1170.2, is not a resentencing. The original indeterminate sentence "for the term provided by law" remains valid. (*In re Brown* (1978) 78 Cal.App.3d 647, 652 [143 Cal.Rptr. 549].) The only difference is that under section 1170.2, the CRB, in deciding whether to reduce a defendant's term below the maximum, may consider ameliorative effects of the DSA on length of sentences generally and the express legislative objective of uniform treatment of offenders. As the court observed in *People* v. *Superior Court*

*(Gonzales), supra,* 78 Cal.App.3d at pages 141-142: "This alternation in the factors to be considered by the administrative body charged with fixing and enforcing legislatively circumscribed and judicially imposed sentences is insufficient to render unconstitutional as to those defendants still falling within its purview a system which has been sustained by the courts for over 60 years." Allowing CRB to fix length of sentences for defendants indeterminately sentenced to state prison after July 1, 1977, for an offense committed prior to that date, does not constitute an unlawful delegation of judicial function to the executive branch of government.

We therefore hold that, in fixing the term of imprisonment for an ISL offender pursuant to Penal Code section 1170.2, the CRB may impose an additional period due to the number of crimes of which the prisoner was convicted, even though the trial court ordered such sentence to run concurrently. Moreover, in assessing an additional period due to multiple convictions, it is reasonable for the CRB to use the formula set forth in Penal Code section 1170.2, subdivision (a), regarding consecutive sentences. This procedure accords with the legislative mandate that, in fixing the term of those indeterminately sentenced, the CRB shall be guided by the term which reasonably could be imposed under the DSA on a person committing a similar crime under similar circumstances.

The order of February 28, 1978, granting the writ of habeas corpus, is reversed.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied November 1, 1978, and respondent's petition for a hearing by the Supreme Court was denied November 30, 1978.