[Civ. No. 20869. Fourth Dist., Div. Two. Sept. 7, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
COMMUNITY RELEASE BOARD, Defendant and Respondent;
GARY HAROLD PHOENIX, Real Party in Interest and Appellant.

COUNSEL

Lawrence Buckley for Real Party in Interest and Appellant.

Quin Denvir, State Public Defender, J. Courtney Shevelson and Richard Lennon, Deputy State Public Defenders, as Amici Curiae on behalf of Real Party in Interest and Appellant.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, and John D. Conley, Deputy District Attorney, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

## OPINION

**GARDNER, P. J.**—In 1971, real party in interest Gary Harold Phoenix was tried and convicted of 30 felony counts, the most serious being 4 counts of kidnaping for robbery in which the victim suffered bodily harm (§ 209).[1] Real party was sentenced to death but after our Supreme Court's decision in *People* v. *Anderson*, 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], real party's sentence was converted to life without possibility of parole. Section 209 was amended in 1976 by the Uniform Determinate Sentencing Act of 1976 (UDSA) to provide that the punishment for kidnaping for robbery, with or without bodily harm to the victim is life with possibility of parole. (Stats. 1976, ch. 1139, § 136.5.) The issue presented by this appeal is whether the amendment operates retroactively to make real party eligible for parole consideration.

Real party's criminal activity followed a consistent pattern. Having spotted a lone woman on the street at night, he would grab her from behind and drag or carry her to his automobile. Keeping her face covered, he would drive her to a secluded spot to be sexually assaulted and robbed. At the trial, real party was shown to have followed this pattern with completed sexual assaults, including rape, sodomy and oral copulation on five separate victims, except that one of these victims was not robbed. Three other victims managed to escape without being sexually assaulted. Real party was found guilty of four counts of kidnaping for robbery (§ 209), two counts of simple kidnaping (§ 207),

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

two counts of attempted kidnaping, six counts of robbery (§ 211), five counts of rape (§ 261), five counts of oral copulation by force (§ 288a), two counts of sodomy by force (§ 286), one count of attempted sodomy, and three counts of assault with intent to rape or rob (§ 220).

Real party was sentenced to death for the four counts of kidnaping for robbery, and to the "term prescribed by law" for two counts of robbery, one count of simple kidnaping, and one count of rape. Sentencing on the other counts was stayed, presumably under section 654. On real party's appeal, the death penalty was modified to life imprisonment without possibility of parole and, as so modified, the judgment was affirmed.

After the UDSA was enacted, the Community Release Board (CRB) requested an opinion from the Attorney General on the question whether the 1976 amendment of section 209, reducing the maximum sentence for kidnaping for robbery to life with possibility of parole, was retroactive to prisoners whose judgments of conviction had become final. The Attorney General issued an unpublished opinion concluding that the amendment was fully retroactive and thus applied to persons in real party's position. The CRB then scheduled a hearing to consider real party's eligibility for parole. (§ 3041 et seq.) Pursuant to section 3042, notice of the hearing was sent to the District Attorney of the County of Orange as the prosecutor of the county from which real party had been sentenced. The district attorney commenced this proceeding by applying for a writ of mandate/prohibition to prevent the CRB from considering real party as a candidate for parole. The district attorney's position was and is that the amendment of section 209 is not retroactive and that real party continues to be under a sentence of life imprisonment without possibility of parole. The court below issued the writ as prayed for and real party has appealed. The CRB has not joined in the appeal but the State Public Defender has filed an amicus brief in support of the position that the 1976 amendment of section 209 is fully retroactive.

I

The main arguments of real party and of the district attorney involve statutory construction. ■ Provisions of the Penal Code are construed according to the "fair import of their terms, with a view to effect its objects and to promote justice." (*In re Andrews,* 18 Cal.3d 208, 212 [133 Cal.Rptr. 365, 555 P.2d 97].) If the language of a provision is clear and there is no uncertainty as to its meaning, the provision is to be applied according to its terms, but if ambiguity is found, interpretation must be

guided by the purpose of the legislation. (*Ibid.*) A specific provision is construed to harmonize various elements of the overall statutory system. (*Bowland* v. *Municipal Court,* 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081].)

The purposes and main features of the UDSA are now well known. Whereas the indeterminate sentencing system in theory allowed each prisoner's sentence to be tailored to his need for and progress toward reform and rehabilitation, the primary purpose of imprisonment is now recognized to be punishment rather than rehabilitation and each prisoner's sentence is to be tailored to the circumstances of the offense or offenses committed. (§ 1170, subd. (a)(1).)

Felonies are divided into two categories: those for which sentence is imposed under section 1168, subdivision (b), and those for which sentence is imposed under section 1170. Persons convicted of crimes for which three periods of imprisonment are specified as punishment, and this includes the vast majority of felonies, are sentenced under section 1170. For convenience, we will refer to this group as the determinate sentence offenses. The remaining crimes, for which sentence is imposed under section 1168, subdivision (b), are those felonies punishable by death, by life imprisonment, or by imprisonment for not more than a year and a day. We will call these the indeterminate sentence crimes. A life sentence with possibility of parole under the new law combines features of the determinate and indeterminate sentencing systems. Parole release dates are to be set "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." (§ 3041, subd. (a).) If this threat to the public is sufficiently grave, however, the CRB may postpone the setting of a release date. (§ 3041, subd. (b).) The CRB's regulations state: "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." (Cal. Admin. Code, tit. 15, § 2281, subd. (a).)

The master retroactivity provision of the UDSA is section 1170.2. In general, it provides that for prisoners who committed determinate sentence offenses before July 1, 1977, and therefore were sentenced under the old law, the CRB is to calculate a parole release date by following procedures similar to those specified for determinate sentencing under section 1170. (§ 1170.2, subd. (a).) The prisoner will be released on parole

when he has served this term, unless he is released earlier under the old law. (§ 1170.2, subds. (b)-(d).)

Real party relies primarily on subdivision (e) of section 1170.2, which provides: "In the case of any inmate who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1168 if the felony was committed on or after July 1, 1977, the Community Release Board shall provide for release from prison as provided for by this code."

This provision may be interpreted either broadly or narrowly. Clearly the subdivision permits the CRB to calculate parole release dates in the same manner for all prisoners serving sentences of life with possibility of parole, regardless of whether the prisoners were sentenced under the old or new law. The question is whether the subdivision also permits the CRB to set a parole release date for a prisoner convicted of an offense prior to the UDSA which then carried a sentence of life without possibility of parole but which after the UDSA carries a sentence of life with possibility of parole. The answer to this question is not unmistakably apparent from the language of the provision.

In support of the broad interpretation, real party argues that since the statute provides for his release according to "this code," and since the new ameliorated penalty provision of section 209 is part of "this code," the CRB has correctly decided that real party may be considered for parole release. The argument implies that if the Legislature had intended the narrower meaning of subdivision (e), the CRB would have been directed to provide for release according to part 3 of the code which deals specifically with length of imprisonment and paroles. This is a valid point, although by no means conclusive. The Legislature may have intended that the CRB should be guided by certain statutes outside part 3, such as section 669 governing concurrent and consecutive sentences.

The argument in favor of the narrow interpretation begins with the observation that in the major restructuring of punishments accomplished by the UDSA, kidnaping for robbery was the only crime for which punishment was reduced from life without possibility of parole to life with possibility of parole. The main purpose of the UDSA is, of course, to establish determinate sentences, but the amendment of section 209 does not directly relate to this objective and appears to have been an accidental outgrowth of the total punishment review which accompanied the UDSA. Use of a broad and equivocal provision such as subdivision (e) would be a peculiarly backhanded approach to the unique and

specific retroactivity problem raised by the amendment of section 209. The job could have been accomplished more easily by a simple statement on retroactivity in section 209 itself. For example, when section 209 was amended in 1951, the Legislature included a provision stating: "Any person serving a sentence of imprisonment for life without possibility of parole following a conviction under this section as it read prior to the effective date of this act shall be eligible for a release on parole as if he had been sentenced to imprisonment for life with possibility of parole."[2] (Stats. 1951, ch. 1749. Other examples are cited in *People* v. *Harmon*, 54 Cal.2d 9, 22-23 [4 Cal.Rptr. 161, 351 P.2d 329].)

Amicus curiae has called our attention to the fact that the provision of the UDSA reducing the punishment for kidnaping for robbery was added during a late amendment. (Sen. Bill No. 42 (1975-1976 Reg. Sess.) as amended, Aug. 13, 1976, § 136.5.) At the same time, the proposed subdivision (e) of section 1170.2 was also amended to substantially its present form. Previously it had read: ". . . the Community Release Board shall consistent with this code, provide for release from prison as established by prior law." Amicus argues that the amendment of subdivision (e) was obviously a response to the retroactivity question raised by the simultaneous amendment of section 209. We view this argument as somewhat tenuous. The earlier language of subdivision (e) was so vague as to be virtually meaningless. The probable purpose of the amendment was to clarify the legislative intent that henceforth parole release dates for all prisoners convicted of indeterminate sentence crimes should be set by following the new procedures established in part 3.

Real party also relies on evidence of a legislative intent to achieve uniform sentencing for similar offenses regardless of the date of commission. (See *In re Gray*, 85 Cal.App.3d 255, 260 [149 Cal.Rptr. 416]; *People* v. *Superior Court (Gonzales)*, 78 Cal.App.3d 134, 142 [144 Cal.Rptr. 89]; *Way* v. *Superior Court*, 74 Cal.App.3d 165, 169, 177 [141 Cal.Rptr. 383].) However, the Legislature did not adhere to this objective slavishly. For example, subdivision (b) of section 1170.2 provides in part that in calculating release dates for prisoners sentenced under the old law for what are now determinate sentence offenses the CRB "shall be guided by, *but not limited to,* the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, *and further, the board shall be guided by the following*

---

[2]The 1951 amendment of section 209 did not reduce punishment but redefined the offense to require asportation in all cases. (See Enright, *California's Aggravated Kidnaping Statute—A Need for Revision*, 4 San Diego L.Rev. 285, 287-291.)

*finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration."* (Italics added.) Also, subdivision (d) provides that prisoners convicted of determinate sentence crimes shall be eligible for good behavior and participation credits only from July 1, 1977. Denial of retroactive credits means that prisoners incarcerated before July 1, 1977, may serve longer terms than those committing identical offenses after that date.

The unifying thread in the express retroactivity provisions appears to be administrative convenience. The Legislature has sought, as far as conveniently possible, to allow all inmates to be processed by a single set of procedures. (See, e.g., § 3065.) No administrative simplification will result, however, from retroactive application of the reduced punishment for kidnaping for robbery. Thus the argument based on an overriding legislative intent to achieve sentencing parity is not entirely convincing in relation to the specific question now before us.

## II

We are forced to the conclusion that the Legislature has not expressly stated whether the amendment of section 209 applies retroactively to persons whose convictions have become final.[3] Fortunately, (or unfortunately, depending on one's point of view) there is a presumption available to fill this gap. "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*In re Estrada,* 63 Cal.2d 740, 745 [48 Cal.Rptr. 172, 408 P.2d 948].) Can the new ameliorated punishment for kidnaping for robbery constitutionally be applied to real party? Clearly it can.

In *Way* v. *Superior Court, supra,* 74 Cal.App.3d 165, the court upheld the provisions of the UDSA which permit retroactive reduction of terms

---

[3]We have not discussed all of the provisions of the UDSA which have been cited to us by the parties in support of their respective positions. To avoid unnecessarily prolonging this opinion, we note simply that in relation to the problem before us the arguments based on these statutory authorities are not convincing and that each party's arguments tend to cancel out those of the opposing party.

of imprisonment for determinate sentence offenses against a contention that the provisions violate the constitutional doctrine of separation of powers. The court concluded that the provisions constituted a legislative pardon (at pp. 176-177) and that the power of pardon is vested exclusively in the executive (at pp. 173-176), but nevertheless decided that there was no improper invasion of the executive power because the retroactivity provisions did not constitute an "act of mercy, grace, or forgiveness toward past offenders, such as characterizes true commutations" (at p. 177) and that the retroactivity feature was merely incidental to the proper legislative function of revising the penal laws. In a concurring opinion, Justice Friedman defended in even stronger terms the Legislature's power to retroactively apply legislation reducing punishment for crime. Justice Friedman declared that a supposed rule insulating final criminal judgments from the impact of penal law revisions was based on nothing but "semantic smoke" and "archaic dictum," and he concluded: "There is nothing sacred about a final judgment of imprisonment which immunizes it from the Legislature's power to achieve equality among past and new offenders." (*Way* v. *Superior Court, supra,* at p. 181, conc. opn. of Friedman, J.)

*Way* was recently cited with approval in a unanimous decision by our Supreme Court. (*Younger* v. *Superior Court,* 21 Cal.3d 102, 117-118 [145 Cal.Rptr. 674, 577 P.2d 1014].) We therefore take it as settled that legislation reducing punishment for crime may constitutionally be applied to prisoners whose judgments have become final. Under the reasoning of *Estrada, supra,* 63 Cal.2d 740, the Legislature must be presumed to have intended that such prisoners receive the benefit of the penalty reduction in the absence of an express provision barring or limiting retroactivity.[4] As a result of the UDSA, therefore, real party's sentence is now life with possibility of parole.

### III

The district attorney suggests that if, as we have concluded, real party may be considered for parole, the matter should be remanded to the original trial court for resentencing. We cannot do so.

The case cited in support of this argument involved a situation in which retroactive application of legislation decriminalizing oral copulation between consenting noninmate adults invalidated a nonfinal judg-

---

[4]The contrary holding of *In re Moreno,* 58 Cal.App.3d 740, 742-743 [130 Cal.Rptr. 78], is not consistent with the most recent developments in this area of the law.

ment of conviction pursuant to a plea bargain. (*People* v. *Collins,* 21 Cal.3d 208 [145 Cal.Rptr. 686, 577 P.2d 1026].) In that case, since there had been a plea bargain, the one count to which the defendant had pleaded guilty was reversed, and the matter remanded to the trial court for the reinstatement of some dismissed counts. We obviously have no plea bargain situation here nor do we have an authority for a remand.

If the district attorney and the trial judge think that society can be best protected by resentencing they may, under the authority of subdivision (d) of section 1170, request the Director of Corrections or the CRB to return the matter to the trial court for resentencing. That section provides that at any time the director or the CRB may recommend the recall of the sentence for the purpose of resentencing.

IV

All of the above does not mean that Gary Harold Phoenix is about to be paroled. It merely means that he may now be *considered* for parole. The CRB is instructed under the UDSA to set parole release dates for life prisoners in a manner that will achieve "uniform terms for offenses of similar gravity" (§ 3041, subd. (a)), and the CRB has established regulations to achieve this goal. (See Cal.Admin. Code, tit. 15, § 2280 et seq.) It is inconceivable that the CRB would seriously consider paroling this individual at this time or in the foreseeable future. The one man reign of terror, and the unspeakable indignities to which he subjected his victims, call for an extensive and prolonged term of imprisonment for the protection of society. Only the CRB stands between this individual and more potential victims. Mr. Phoenix freely admits that rape has been part of his behavior pattern all of his life simply because he likes to degrade females. It is true that he has been the recipient of governmental largesse at the hands of the Supreme Court when it knocked out the death penalty in *Anderson,* and at the hands of the Legislature which no longer feels that the offenses call for life without the possibility of parole. Nevertheless, he still faces a life sentence. How much of that he is to serve will be up to the CRB.

Judgment granting writ of mandate reversed.

Tamura, J., and McDaniel, J., concurred.

A petition for a rehearing was denied October 2, 1979.