[No. F026945. Fifth Dist. Feb. 24, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
LONNIE WEST, Defendant and Appellant.

**COUNSEL**

Hayes H. Gable, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARDAIZ, P. J.—**

### INTRODUCTION

A jury found appellant Lonnie West to be a sexually violent predator within the meaning of section 6600, subdivision (a) of the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq., hereinafter the SVP Act or the Act).[1] The court then committed him to the Department of Mental Health for a two-year period. (See § 6604.) He contends on this appeal that the jury's finding that he is a sexually violent predator is not supported by substantial evidence. At the time of appellant's trial, the definition of "sexually violent predator" included a requirement that the "person . . . has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence . . . ." (§ 6600, subd. (a).) Although appellant stipulated at trial that he was convicted of forcible rape in 1975 and again in 1983, he contends that there was no evidence he received a determinate sentence for the 1975 rape conviction. Therefore, he says, the evidence presented at trial was insufficient to demonstrate that he fell within the definition of the term "sexually violent predator." In order to place appellant's argument in context, we will begin with a brief overview of the Act, and then a brief summary of the evidence presented at appellant's trial. Then we will address appellant's contention that there is insufficient evidence to support the jury's finding. Given appellant's egregious record and evident danger to the public within the meaning of the Act, we acknowledge that individuals such as appellant may benefit from a "legislative

---

[1]All further references are to the Welfare and Institutions Code unless otherwise stated.

oversight." However, we find no legal or practical solution to the express words of this statute that created the anomaly which inures to appellant's benefit. This is so regardless of the objective of the statutes. Subsequent legislative modifications have arguably rendered our interpretation herein of limited consequence. Nonetheless, under the facts of this case we reverse.

## THE SEXUALLY VIOLENT PREDATORS ACT

The Act, adding sections 6600 through 6608 to the Welfare and Institutions Code, was enacted October 11, 1995, effective January 1, 1996. (Stats. 1995, chs. 762, 763.) In section 1, the Legislature set forth its findings and summarized the purpose of the new law, as follows:

"The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society.

"The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes." (Stats. 1995, chs. 762, § 1, 763, § 1.)

A "sexually violent predator" (or SVP) is defined in section 6600, subdivision (a), as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received *a determinate* sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Italics added.) Sexually

violent offenses, for purposes of the SVP law are listed in section 6600, subdivision (b).[2]

Under section 6601, if the Director of the Department of Corrections determines that a prisoner may be an SVP, the director shall refer that person for an initial screening evaluation at least six months prior to his or her scheduled release date.[3] (§ 6601, subds. (a) and (b).) If it is determined that the person is likely to be an SVP, he or she is then referred to the State Department of Mental Health for a full SVP evaluation. (§ 6601, subd. (b).)

The person is evaluated by two practicing psychiatrists or psychologists in accordance with a standardized assessment protocol. "The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c).)

If both of the evaluators find that the person "has a diagnosed mental disorder such that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the Department of Mental Health requests a petition for commitment under section 6602 and forwards the evaluations and supporting documents to the county of the person's latest conviction. (§ 6601, subds. (d) & (i).) If the designated attorney concurs with the recommendation, a petition for commitment is filed in superior court. (§ 6601, subd. (i).)

A probable cause hearing is then held before a superior court judge. The individual named in the petition is entitled to assistance of counsel at this hearing. If the judge determines there is probable cause to believe that the person is likely to engage in sexually violent predatory criminal behavior upon his or her release from prison, the judge shall order that a trial be conducted "to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person

---

[2]As originally enacted, subdivision (b) of section 6600 stated: " 'Sexually violent offense' means the following acts when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, and that are committed on, before, or after the effective date of this article and result in a conviction and a determinate sentence: a felony violation of paragraph (2) of subdivision (a) of Section 261, paragraph (1) of subdivision (a) of Section 262, Section 264.1, subdivision (a) or (b) of Section 288, or subdivision (a) of Section 289 of the Penal Code, or sodomy or oral copulation in violation of Section 286 or 288a of the Penal Code." (Stats. 1995, ch. 763, § 3.)

[3]This six-month time does not apply during the first year the law is operative. (§ 6601, subd. (j).)

is likely to engage in acts of sexual violence upon his or her release . . . ." (§ 6602.)

The person subject to the petition is entitled to a trial by jury, the assistance of counsel and the right to retain experts or professional persons to perform further evaluations. He or she is also entitled to have access to all relevant medical and psychological records and reports. (§ 6603, subd. (a).) A unanimous verdict is required in any jury trial. (§ 6603, subd. (d).)

The burden of proof is on the state to show that the person is a sexually violent predator "beyond a reasonable doubt." (§ 6604.) If it is so determined, the person shall be committed for a period of two years "to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility . . . ." The person shall not be kept in confinement longer than two years unless a new petition is filed and an extended commitment is obtained from the court. (*Ibid.*)

A person committed under the SVP Act shall have an examination of his or her mental condition at least once every year, and is entitled to the appointment of an expert and to review all records. (§ 6605, subd. (a).) Unless the person affirmatively waives the right to a hearing, the superior court must annually set a show cause hearing to determine if the person's condition has so changed that he or she would not be a danger to the health and safety of others if released from confinement. (§ 6605, subd. (b).) If the court so finds, then the person is entitled to a full trial with the same rights and constitutional protections as were afforded at the initial commitment hearing. (§ 6605, subd. (d).) Also, at any time that the Department of Mental Health has reason to believe that the person is no longer an SVP, it must seek judicial review of the commitment. (§ 6605, subd. (f).)

Finally, the person can be placed on conditional release upon a finding that he or she is not likely to engage in sexually violent predatory criminal acts while under supervision and treatment in the community. (§ 6607.) A conditional release hearing may be held at any time after a year from the date of the commitment order, upon the recommendation of the Director of the Department of Mental Health or upon a petition by the SVP. (§ 6608.)

Any person committed as an SVP must be provided with treatment for his or her diagnosed mental disorder, whether or not it is found the person is amenable to treatment. (§ 6606, subds. (a) & (b).) The treatment "shall be consistent with current institutional standards for the treatment of sex offenders . . . ." (§ 6606, subd. (c).)

## FACTS

At trial the People and appellant stipulated that appellant "has in fact been convicted in October of 1975, and again on—I have the exact conviction date—again on October of 1983 for the crime of forcible rape under Section 261.2 or 261.3, which was the number that was given back in the 1970s, and, in fact, was committed to prison on two separate occasions involving two separate victims, both of whom were strangers to [appellant]." The People presented three expert witnesses to testify on the issue of whether appellant "has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a).) All three (Dr. Howard Terrell, Dr. Jonathan French, and Dr. Debra Inman) testified that appellant did have such a disorder and that he was likely to engage in sexually violent criminal behavior. At least one of appellant's two forcible rapes was committed at knifepoint. Appellant's parole agent testified about appellant's frequent outbursts of anger. The parole agent also testified that appellant's own family members would call the agent "weekly" to complain about appellant's behavior during the few time periods when appellant was not in custody. Appellant did not testify, and he called no defense witnesses. His unsuccessful defense was an argument that he was not "likely" to engage in "sexually violent criminal behavior" in the future because he was not arrested for any sexually violent offense between his June 1993 completion of his prison term for his second rape conviction and his June 1994 return to prison as a result of a violent nonsexual assault on his sister-in-law. Other facts pertinent to this appeal will be discussed below in conjunction with our analysis of appellant's contention that the jury's verdict is not supported by substantial evidence.

## DISCUSSION

Appellant's contention that the jury's verdict is not supported by substantial evidence appears to us to be meritorious. At the time of appellant's July 1996 trial, subdivision (a) of section 6600 stated:

"(a) 'Sexually violent predator' means a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.

". . . . . . . . . . . . . . . . . . . . . . . . .

"Conviction of one or more of the crimes enumerated in this section shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination. . . . Jurors shall be admonished that they may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (d).) As we have already mentioned, the parties stipulated that appellant had two rape convictions "and, in fact, was committed to prison on two separate occasions involving two separate victims, both of whom were strangers to [appellant]." This stipulation did not expressly say anything about any "determinate sentence." But the court instructed the jury that appellant had received determinate sentences for his crimes. The court said:

"In the petition filed by the district attorney it is alleged that the defendant is a sexually violent predator.

" 'Sexually violent predator' means a person who has been convicted of a sexually violent offense against two or more victims for which he received a determinant sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he will engage in sexually violent criminal behavior.

"The parties have stipulated that the defendant has been convicted of a sexually violent offense against two victims and received a determinant [*sic*] sentence therefore [*sic*].

"It is the People's burden to further prove that, number one, defendant has a diagnosed mental disorder, and, number two, such disorder makes the defendant a danger to the health and safety of others in that it is likely he will engage in sexually violent criminal behavior.

"You may not find the of [*sic*] defendant to be a sexually violent predator based on prior offenses unless you further find that defendant has a currently diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely that he will engage in sexually violent criminal behavior."

Appellant raised no objection to this instruction. Nor did appellant make any argument at trial that the People had failed to present evidence of appellant having received a determinate sentence. Possibly appellant's trial

counsel and the deputy district attorney both viewed the stipulation that appellant "was committed to prison" for his 1975 rape conviction to be sufficient to satisfy the statutory requirement of having received "a determinate sentence." (§ 6600, subd. (a).) Or possibly they simply overlooked the fact that their stipulation did not include a clause stating that appellant had received determinate sentences for his crimes. ▮ In any event, a judgment challenged for insufficiency of the evidence cannot stand if substantial evidence does not support it. (*Estate of Teed* (1952) 112 Cal.App.2d 638 [247 P.2d 54].) In the present case no evidence at all was presented to show that appellant received a determinate sentence for his 1975 rape conviction.

In 1917 the Legislature enacted the Indeterminate Sentence Law (ISL) (Pen. Code, § 1168). This law "divested the trial judge of power to fix the term of imprisonment for offenses punishable by imprisonment in a state prison, and gave this power to the Adult Authority." (3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment For Crime, § 1446, p. 1712.) The theory behind indeterminate sentencing was explained in *In re Lee* (1918) 177 Cal. 690, 692-693 [171 P. 958]: "It is generally recognized by the courts and by modern penologists that the purpose of the indeterminate sentence law, like other modern laws in relation to the administration of the criminal law, is to mitigate the punishment which would otherwise be imposed upon the offender. These laws place emphasis upon the reformation of the offender. They seek to make the punishment fit the criminal rather than the crime. They endeavor to put before the prisoner great incentive to well-doing in order that his will to do well should be strengthened and confirmed by the habit of well-doing. Instead of trying to break the will of the offender and make him submissive, the purpose is to strengthen his will to do right and lessen his temptation to do wrong." In 1976 the Legislature repealed the ISL and replaced it with the Determinate Sentencing Act (DSA). (Stats. 1976, ch. 1139, p. 5140; Pen. Code, § 1170.) The DSA became operative on July 1, 1977. (3 Witkin & Epstein, Cal. Criminal Law, *supra*, § 1446, p. 1712.) The DSA no longer emphasized reformation of the offender. Instead, its focus was on punishing crime through the imposition of prison terms of fixed duration. This purpose was made clear by the very first subdivision of the new law. Penal Code section 1170, subdivision (a)(1), stated: "The Legislature finds and declares that the purpose of imprisonment for crime is punishment. This purpose is best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances. The Legislature further finds and declares that the elimination of disparity and the provision of uniformity of sentences can best be achieved by determinate sentences fixed by statute in proportion to the seriousness of

the offense as determined by the Legislature to be imposed by the trial court with specified discretion."

The difference between indeterminate sentencing and determinate sentencing was explained in *In re Gray* (1978) 85 Cal.App.3d 255, 259 [149 Cal.Rptr. 416], as follows:

"Under the ISL, adopted in 1917, the Legislature prescribed both the minimum and maximum terms for each offense punishable by imprisonment in the state prison. The trial court did not specify the length of imprisonment, but simply sentenced the defendant for the term 'prescribed by law.' (Former Pen. Code, § 1168.) This sentence was deemed to be a sentence for the maximum term. (*In re Lee* (1918) 177 Cal. 690, 693 . . . .) The Adult Authority or its predecessor agencies determined and redetermined within those very wide statutory ranges, the length of term the offender would actually be required to serve. (*In re Lynch* (1972) 8 Cal.3d 410, 415, 417 . . . .) In making such a determination, the authority exercised a broad discretion (*In re Troglin* (1975) 51 Cal.App.3d 434, 440 . . .); taking into consideration such factors as the nature of the prisoner's offense, his felony conviction record, the probability of his reformation, and the interests of public security. (*Id.*) Any release date earlier than the maximum sentence was supposed to reflect a recognition of the prisoner's efforts at rehabilitation. (*People* v. *Superior Court* (*Gonzales*) (1978) 78 Cal.App.3d 134, 141 . . . .) The Supreme Court consistently sustained the constitutionality of the ISL against challenges that it infringed the doctrine of separation of powers. (*In re Lee, supra*, 177 Cal. 690 at p. 693; see also *In re Wells* (1950) 35 Cal.2d 889, 893 . . . ; *In re Larsen* (1955) 44 Cal.2d 642, 647-648 . . . ; *In re Lynch, supra*, 8 Cal.3d 410 at p. 417.)

"Effective July 1, 1977, California repealed its indeterminate sentencing law. On that date, the Uniform Determinate Sentencing Act of 1976, as amended by statutes in 1977, became operative. The DSA returns the sentencing power to the courts, but requires sentencing judges to impose the 'middle' of three statutorily determined lengths of incarceration for a crime, unless there are 'circumstances in aggravation or mitigation,' in which case the longer or shorter period will be imposed. (Pen. Code, § 1170.2, subd. (b); see *Way* v. *Superior Court* (1977) 74 Cal.App.3d 165, 170 . . . .) A sentence may also be increased if consecutive sentences are imposed (Pen. Code, § 1170.1, subd. (a)), or if certain 'enhancements' are pleaded and proved. (See Pen. Code, §§ 667.5, 12022, subds. (a) and (b); 12022.5; 12022.6, subds. (a) and (b); 12022.7.) Certain limitations in the number of enhancements and the total sentence which may be imposed are specified in Penal Code [section] 1170.1." (85 Cal.App.3d at p. 259, fn. omitted.) The

DSA included provisions instructing the Community Release Board to fix terms for those prisoners who had been indeterminately sentenced under the ISL.[4] Generally speaking, Penal Code section 1170.2 required the Community Release Board (CRB) to determine what length of time an inmate would have been imprisoned if the inmate had originally been sentenced under the DSA for the crime or crimes the inmate committed. (See Pen. Code, § 1170.2, subd. (a); *In re Caudillo, supra,* 26 Cal.3d at pp. 630-631; 3 Witkin & Epstein, Cal. Criminal Law, *supra,* § 1451, pp. 1716-1718; and Cassou & Taugher, *Determinate Sentencing in California: The New Numbers Game* (1978) 9 Pacific L.J. 5, 92-94.) For the more serious offenders, the DSA authorized the CRB to set a later release date if "a majority of all of the members of the Community Release Board after reviewing the prisoner's file, determine that due to the number of crimes the prisoner was convicted of, or due to the number of prior convictions the prisoner has been convicted of, or due to the fact that the prisoner was armed with a deadly weapon when the crime was committed, or used a deadly weapon during the commission of the crime, or inflicted or attempted to inflict great bodily injury on the victim of the crime, the prisoner should serve a term longer . . . ." (Pen. Code, § 1170.2, subd. (c), as originally enacted in Stats. 1976, ch. 1139, p. 5144; see now Pen. Code, § 1170.2, subd. (b).) "If the CRB makes a determination that a longer prison term is warranted in light of the prisoner's record, the prisoner is entitled to a serious offender hearing before a panel consisting of at least two members of the CRB. At the hearing, the prisoner is entitled to be represented by counsel. After the serious offender hearing has been held, the CRB is required to set the prisoner's parole-release date and inform the prisoner in writing 'of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated.' " (*In re Caudillo, supra,* 26 Cal.3d at p. 632.)

Exhibit 1 at appellant's trial was a 969b packet (see Pen. Code, § 969b) containing Department of Corrections records pertaining to appellant. These records showed that appellant's 1975 conviction was for "RAPE, while being personally armed with a knife having a blade longer than five inches." They also showed that appellant had two CRB hearings in 1979 and then was paroled in 1980. This was evidence that the CRB followed the serious offender provisions of Penal Code section 1170.2 and set a release date for appellant. Appellant does not contend otherwise. But this was not evidence that appellant received a determinate sentence.

Notwithstanding the fact that the CRB could establish a release date for a prisoner sentenced under the ISL, appellant could not have "received a

---

[4]The Community Release Board was the successor to the Adult Authority. (*In re Gray, supra,* 85 Cal.App.3d at p. 260.) In 1980 the board became known as the Board of Prison Terms. (Stats. 1979, ch. 255, § 9, p. 551; *In re Caudillo* (1980) 26 Cal.3d 623, 626, fn. 1 [164 Cal.Rptr. 692, 610 P.2d 1021].)

determinate sentence" (§ 6600, subd. (a)) for his 1975 rape conviction. As the abstract of judgment for that crime expressly stated, appellant was sentenced "by imprisonment . . . for the term provided by law . . . ." The DSA "precludes determinate sentencing by the court in those cases where the crime was committed prior to July 1, 1977." (*People* v. *Alcala* (1977) 74 Cal.App.3d 425, 427 [141 Cal.Rptr. 442].) "Instead, the Legislature has set up statutory procedures by which the Community Release Board shall apply the act to those persons who committed their crimes prior to July 1, 1977." (*Id.* at p. 427) "Section 1170.2 does not direct that a prisoner who committed a felony prior to July 1, 1977, be resentenced, and the original sentence 'for the term prescribed by law' . . . remains valid." (*In re Brown* (1978) 78 Cal.App.3d 647, 652 [143 Cal.Rptr. 549].) "[R]ecalculation by the CRB of an ISL offender's term of imprisonment pursuant to Penal Code section 1170.2, is not a resentencing. The original indeterminate sentence 'for the term prescribed by law' remains valid." (*In re Gray*, *supra*, 85 Cal.App.3d at p. 262; in accord, see also this court's opinion in *In re Greenwood* (1978) 87 Cal.App.3d 777, 783 [151 Cal.Rptr. 223].) Thus appellant (1) received an indeterminate term when he was sentenced on his first rape conviction, and (2) was never "resentenced" to a determinate term. Not surprisingly, therefore, no evidence was presented at trial that appellant did receive a determinate term for his 1975 rape conviction. Substantial evidence is evidence which is "reasonable in nature, credible, and of solid value." (*Estate of Teed*, *supra*, 112 Cal.App.2d at p. 644; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) No evidence at all cannot constitute substantial evidence.

■ "[O]ur primary task in construing a statute is to determine the Legislature's intent." (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) "The court turns first to the words themselves for the answer." (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].) "When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) " 'The courts may not speculate that the legislature meant something other than what it said. Nor may they rewrite a statute to make it express an intent not expressed therein.' " (*Woodmansee* v. *Lowery* (1959) 167 Cal.App.2d 645, 652 [334 P.2d 991].) It has been said that "[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole." (*Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].) ■ We cannot conclude, however, that the expressed legislative requirement that a sexually violent predator "received a determinate sentence" for his or her

crimes was an absurdity. The SVP Act was enacted in 1995 and took effect in 1996. Criminals whose sexually violent offenses (see § 6600, subd. (b)) were committed on or after July 1, 1977, and who were imprisoned, received determinate sentences. The Legislature could reasonably have decided that someone who had not had two convictions for sexually violent offenses within the 18 years preceding enactment of the SVP Act was not sufficiently predatory to be targeted by the Act.

Respondent argues that appellant "received a determinate sentence" within the meaning of section 6600, subdivision (a) for his 1975 rape conviction. Respondent says this is so because a subsequent amendment to section 6600, subdivision (a) purportedly "clarified" the statute to call for that result. We see no such "clarification." A 1996 amendment to section 6600 took effect on September 13, 1996. This was a month and a half after the July 31, 1996, end of appellant's trial. The 1996 legislation altered subdivisions (a) and (b) to read as follows:

"(a) 'Sexually violent predator' means a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.

*"For purposes of this subdivision, a prior finding of not guilty by reason of insanity for an offense described in subdivision (b), a conviction prior to July 1, 1977, for an offense described in subdivision (b), a conviction resulting in a finding that the person was a mentally disordered sex offender, or a conviction in another state for an offense that includes all the elements of an offense described in subdivision (b), shall also be deemed to be a sexually violent offense even if the offender did not receive a determinate sentence for that prior offense.*

"Conviction of one or more of the crimes enumerated in this section shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination. *The existence of any prior convictions may be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health.* Jurors shall be admonished that they may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently

diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.

"(b)'Sexually violent offense' means the following acts when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, and that are committed on, before, or after the effective date of this article and result in a conviction *or a finding of not guilty by reason of insanity, as provided in subdivision (a)*: a felony violation of paragraph (2) of subdivision (a) of Section 261, paragraph (1) of subdivision (a) of Section 262, Section 264.1, subdivision (a) or (b) of Section 288, or subdivision (a) of Section 289 of the Penal Code, or sodomy or oral copulation in violation of Section 286 or 288a of the Penal Code."

Nothing in the 1996 amendment states that it is intended to clarify existing law. "[T]he legislative history of the statute . . . may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) A committee report prepared for a July 9, 1996, hearing before the Senate Committee on Criminal Procedure for the bill which ultimately became the 1996 amendment (Assem. Bill No. 3130) (1995-1996 Reg. Sess.) stated in pertinent part: "This bill would increase the definition of a 'sexually violent predator' to include persons who have a prior finding not guilty by reason of insanity, who were convicted under indeterminate sentencing law, or who have an out-of-state conviction, for one of the specified offenses, or who were designated as Mentally Disordered Sex Offenders under that program." Whether the 1996 amendment actually achieved this stated purpose is an issue we need not address here.[5] The important point here is that the bill either "increase[d] the definition of a 'sexually violent predator' " or attempted to do so. The amendment was not simply a clarification of existing law. And even if we assume, without deciding the issue, that the 1996 amendment did indeed expand the definition of "sexually violent predator" so that a conviction of a sexually violent offense for which the offender received an indeterminate sentence can be used as an element of the section 6600, subdivision (a) definition of "sexually violent predator,"

---

[5]We note that although the Senate Committee report stated that the definition of "sexually violent predator" was changed by the 1996 amendment, the new second paragraph of section 6600, subdivision (a) talks about a "conviction prior to July 1, 1977, for an offense described in subdivision (b)" being "deemed to be a sexually violent offense . . . ." A pre-July 1, 1977, rape conviction was already a "sexually violent offense" within the meaning of section 6600, subdivision (b). It was just not one for which a determinate sentence was imposed. The 1996 amendment did not make any express change in the definition of "sexually violent predator" appearing in the first paragraph of section 6600, subdivision (a). That paragraph still says that a " '[s]exually violent predator' means a person who has been convicted of a sexually violent offense . . . for which he or she received a determinate sentence . . . ."

that amendment does not help respondent because it had not yet become law when appellant's trial took place. Appellant's trial took place when the original section 6600 (see Stats. 1995, ch. 763, § 3) was still in effect.

The judgment is reversed.

Vartabedian, J., and Wiseman, J., concurred.