[Crim. No. 21581. First Dist., Div. Four. Sept. 8, 1981.]

In re LARRY JAMES HENSON on Habeas Corpus.

Counsel

Michael R. Snedeker, under appointment by the Court of Appeal, for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein, John J. Murphy and Ina Levin Gyemant, Deputy Attorneys General, for Respondent.

Opinion

POCHÉ, J.—In 1973 petitioner was convicted of first degree murder (Pen. Code, § 187) and was sentenced to life imprisonment under the indeterminate sentencing law (ISL) then in effect. Three years later,

the Adult Authority published guidelines which contained suggested ranges for life terms and also articulated criteria for determining parole release dates.

On July 1, 1977, the determinate sentence law (DSL) became effective. (Pen. Code, § 1170.) Thirteen months later (July 31, 1978) new guidelines were promulgated, which, like the earlier ones, set forth standards to be employed for determining parole release dates for life prisoners. These new regulations give any life prisoner whose release date was established before July 1, 1977, (the effective date of DSL) an additional hearing to fix his release date under the DSL guidelines. In what appears to have been an attempt to avoid ex post facto problems such prisoners are also given the benefit of whichever determination provides earlier release. (Cal. Admin. Code, tit. 15, § 2292, subd. (c).)[1] For example, if on June 1, 1977, a life prisoner received a parole release date of January 1, 1985, he would be entitled to an additional hearing under the new rules, and, if as a result a parole date of January 1, 1984, is set, his release would occur on that day.

■ The focus of petitioner's equal protection challenge is section 2292[2] which provides that a life prisoner sentenced under ISL whose parole release date was not established before July 1, 1977, will have his date determined exclusively under the new DSL regulations. Petitioner falls within this group.[3]

---

[1]All section references are to title 15 of the California Administrative Code unless otherwise indicated.

[2]Section 2292, provides in pertinent part: "(a) General. All life prisoners heard after the effective date of these regulations shall be heard in accordance with this article. Prisoners who had a parole release date established under prior regulations shall retain that parole release date, as reduced by any appropriate postconviction credit under applicable rules. Such prisoners shall be released on the earlier of the two release dates. [¶] (b) No Parole Date Was Set Prior to July 1, 1977. The hearing panel shall deny parole or set a parole date as provided in §§ 2281-2290. [¶] (c) Parole Date Was Set Prior to July 1, 1977. The hearing panel shall deny parole or set a parole date as provided in §§ 2281-2290 as though no parole date had been set previously. If the parole date is earlier than a parole date set before the effective date of these regulations, the date set under these regulations is the controlling parole date. If the parole date is later than the previous date, the previous date is the controlling parole date."

[3]Petitioner did not receive a hearing under ISL guidelines nor was a parole release date established for him before July 1, 1977. Instead, his first hearing was held January 10, 1979: using DSL standards, his net term of confinement was set at 15 years and 10 months. We note that under ISL, petitioner's minimum eligible parole date (MEPD) was May 30, 1979. Penal Code section 3041 provides that life prisoners shall have their first parole consideration hearing one year prior to their MEPD. Thus, peti-

The effect of section 2292 is to divide an identifiable group of individuals (life prisoners) into two smaller groupings: (1) those who had a parole release date established under earlier regulations and (2) those who did not.[4] Those, like petitioner, who fall into the second category, have the determination of how long they stay in prison calculated under only one set of rules. Those in the first group have the length of their confinement computed under each of two sets of rules and obtain the benefit of the shorter determination. To draw the picture more vividly, crime partners who commit the same offense punishable under the ISL may, under section 2292, be treated quite differently. One prisoner who receives a hearing and parole determination before July 1, 1977, is entitled not only to a second hearing before a board which will use a different set of criteria to decide how long he stays in prison, but he also receives the benefit of the earlier release date. The second criminal, like petitioner, must be content with one hearing, one set of rules and one date.

The members of petitioner's class have an interest in being free from incarceration as soon as possible. That interest, dubbed by Chief Justice Wright a "personal liberty interest," has been determined by a unanimous Supreme Court to be "a fundamental interest, second only to life itself."[5] (*People* v. *Olivas* (1976) 17 Cal.3d 236, 245, 251 [131

---

tioner should have had his first parole hearing on May 30, 1978, *before* the DSL guidelines went into effect on July 31, 1978.

However, the delay to January 10, 1979, did not alter petitioner's status because the two-hearing cutoff date is July 1, 1977. Hence, even if petitioner had received his parole hearing on time, his parole release date still would have been established after the July 1, 1977, cut-off date; thus he would only receive one hearing under DSL standards. (§ 2292, subd. (b).)

[4]A person could fall into grouping (2) for any number of reasons, including: (a) he was not scheduled to have his first parole consideration hearing prior to July 1, 1977; (b) he was so scheduled, but he was found unsuitable for parole under Penal Code section 3041 and thus did not receive a release date; or (c) he was committed after July 1, 1977.

We note there is a subclass of persons under (a) above: those who were scheduled to have their parole release consideration hearing before July 1, 1977, and would have received a release date if the hearing had been held on time. The Attorney General concedes these initial parole consideration hearings have been delayed in many cases because of the press of business caused by the hearings. He further conceded at oral argument that he would not challenge the application of section 2292 to this subclass.

[5]A term setting classification procedure need not meet the more stringent "strict scrutiny" test unless it *directly* affects a fundamental interest in liberty. (*In re Flodihn* (1979) 25 Cal.3d 561, 568 [159 Cal.Rptr. 327, 601 P.2d 559].) The criterion at issue in *Flodihn* was merely one of several used first to determine if an inmate was one of those who might be subject to a serious offender hearing, and second to determine which of such persons should in fact have such hearings, at which time their DSL term

Cal.Rptr. 55, 551 P.2d 375].) Where a fundamental interest is involved both the California Supreme Court and the United States Supreme Court require the classification be subjected to strict scrutiny. (*People v. Olivas, supra*, 17 Cal.3d at p. 243.) Under such review, "the burden shifts; thereafter *the state* must first establish that it has a *compelling* interest which justifies the law and then demonstrate that the distinctions drawn by the law are *necessary* to further that purpose. [Citations.]" (*Id.*, at p. 251; italics in original.)

The challenged release date setting scheme does not withstand a strict scrutiny review. The Attorney General has failed to show a state interest which compels the distinction drawn by section 2292. In response to specific questions posed by this court the only interest suggested is administrative convenience. But eliminating the burden created by requiring two parole hearings for petitioner and the members of his class does not reach the dignity of a compelling state interest particularly because other ISL life prisoners are receiving two such hearings.[6] Even if administrative convenience could measure up, the state has not met its "heavy burden" of proving its choice of July 1, 1977, as the cutoff date was *necessary* to promote that interest. (Cf., *Hawkins v. Superior Court* (1978) 22 Cal.3d 584, 592 [150 Cal.Rptr. 435, 586 P.2d 916].) In fact, the Attorney General has not made any suggestions in this regard.

The parole date setting scheme embraced in section 2292 results in a denial of equal protection under article I, section 7 of the California Constitution and the Fourteenth Amendment of the United States Constitution to the extent that it denies life prisoners who did not have parole release dates established under the ISL guidelines prior to July 1, 1977, the benefit of a hearing under those regulations and a release on the earlier of the two dates.[7]

---

*might* be extended. (See pp. 566, 568.) Unlike *Flodihn*, the case at bench involves criteria which much more directly determine an inmate's time in custody.

[6]Also, nonlife ISL prisoners receive two parole hearings, one under the ISL and one under the DSL guidelines, regardless of whether their parole release dates were established before or after July 1, 1977. The DSL guidelines provide that "[i]n addition to receiving a DSL release date, each person who is eligible for parole under the ISL earlier than the DSL release date will receive ISL hearings to consider a parole earlier than the DSL release date." (§ 2145.) "Actual release on parole shall occur on the ISL parole date ... or the DSL release date, whichever occurs first." (§ 2300.) Life prisoners deserve no less.

[7]In light of our holding it is unnecessary to address petitioner's ex post facto claim.

We direct the Board of Prison Terms: to afford petitioner: (1) a hearing under the ISL regulations and a determination thereunder of a parole release date, and (2) the earlier of the release dates set at this hearing and at the hearing held January 10, 1979. To this extent only the petition for habeas corpus is granted.

Caldecott, P. J., and Christian, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 5, 1981.