**Willard Neils BETTIN,**
**Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C7–86–705.

Court of Appeals of Minnesota.

Nov. 18, 1986.

Review Denied Dec. 17, 1986.

David G. Skeen, Port Townsend, Wash., for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

SEDGWICK, Judge.

Willard Bettin appeals from an order denying his petition for post-conviction relief. Appellant argues that he is no longer a danger to society and that he was denied equal protection since he must serve a longer sentence than a guidelines inmate. We affirm.

## FACTS

Willard Bettin has been twice convicted for criminal sexual conduct. He was convicted in 1974 under Minn.Stat. § 609.291 (1971) for the aggravated rape of an 83 year old woman, a neighbor of his parents. Bettin was sentenced to one to thirty years in prison.

While Bettin was on work-release in 1978, he raped the 25 year old wife of his volunteer escort in the pre-release program. He was convicted of third degree criminal sexual conduct and sentenced to a 10 year term, to run concurrently with his prior sentence. The second jail term terminated in January, 1986.

Appellant previously sought, and was denied, post-conviction relief on December 24, 1981. Bettin seeks post-conviction relief a second time based on several factors: he is now engaged; he has an unblemished prison record; his health has deteriorated and a psychologist has termed Bettin a minimal risk to society as the result of age (58) and infirmity.

Bettin also argues that the sentence he is presently serving is an indeterminate term not to exceed 30 years. He will be confined until November 24, 1994 after good time has been deducted, a sentence which is disparate with the sentencing guidelines.

## ISSUES

1. Did appellant meet his burden for early release by showing he was not a danger to the public or society?

2. Has appellant been denied equal protection since he serves a longer indeterminate sentence under the old law than a similarly convicted rapist under the new determinate guidelines?

## ANALYSIS

Under Minn.Stat. § 590.01 a prisoner may seek post-conviction relief based on the change of the law—such as the institution of the determinate sentencing guidelines.

Appellant has the burden of proof in seeking early release under Minn.Stat. § 590.01. *Smith v. State,* 317 N.W.2d 366, 367 (Minn.1982); *State v. Champion,* 319 N.W.2d 21, 23 (Minn.1982). Appellant must show he will not endanger the public and that his early release is not inconsistent with society's welfare. Past and present conduct may be considered in order to predict future likely conduct. *Id.*

1. Danger to Society.

Appellant argues marriage will provide a stable life. In addition, he is 58 years old, has had partial bypass surgery and takes 38 prescription pills per day.

The appellant's past conduct demonstrates hostility towards women and, as assessed by his psychologist, Dr. Grant, a need to undermine his own success. Dr. Grant summarized Bettin as follows:

> Mr. Bettin appears to be a likable, somewhat anxious individual who may not so much have profited from his experience as we would like, but whose dangers to the community are minimal in view of his age and infirmity.

The trial court did not consider the report as being dispositive of Bettin's danger to the public. The psychologist stated that

Bettin can cope with life in a structured prison environment, but cannot easily deal with outside life or any type of success. He is driven to self-destruction by success. The trial court also doubted the severity of Bettin's health conditions based on two medical reports. The court noted that the only thing detrimental to his health at this time is his continued smoking. His potential marriage was also interpreted by the court as proof of his current sexual capacity which indicates the potential for violent sexual acts.

The trial court was not bound by the psychologist's expert opinion. *Johnson v. State,* 331 N.W.2d 757, 758 (Minn.1983). The supreme court has stated:

> Our opinions in a number of cases make it clear that we generally will not interfere with the postconviction court's refusal to make the finding that is prerequisite to resentencing, at least in cases in which the petitioner is serving a sentence for a violent offense or has a record suggesting that he is likely to engage in criminal conduct after his release.

*Champion,* 319 N.W.2d at 23.

Here, the evidence indicates Bettin is still psychologically geared for violence, so medical evidence of his incapacity for violence would be necessary if Bettin were to meet his burden. The trial court was correct in finding that the medical reports "cast real doubt on petitioner's claim of extreme infirmity."

### 2. Equal Protection.

Appellant claims a denial of equal protection because his pre-guideline sentence exceeds the presumptive sentence under the guidelines. Appellant calculates he will serve anywhere from eight to fifteen years longer then he would if sentenced under the guidelines.

Respondent argues that equal protection should not be considered by this court because the issue was not properly presented to the trial court. However, equal protection was raised and argued in closing argument at trial and we will address Bettin's claim.

In *State v. Witt,* 310 Minn. 211, 215, 245 N.W.2d 612, 616 (1976), the Minnesota Supreme Court stated:

> The sole limitation which the equal protection clause imposes upon the legislature in the exercise of this power is that criminal statutes must not prescribe different punishments for the same acts committed under the same circumstances by persons in like situations.

The question then is whether the new guidelines prescribe different punishments for the same acts committed under the same circumstances by persons in like situations. Appellant argues that in order to be sentenced under the guidelines and obtain early release he must prove he is no longer dangerous, whereas persons sentenced under the guidelines adopted May 1, 1980 are released after serving their sentence whether they are dangerous or not. While that argument is true, it is immaterial because he is comparing two distinct classes of prisoners; those applying for resentencing versus those entitled to leave prison when their original sentence ends. A prisoner is not denied equal protection of the laws or due process of law so long as the sentence was imposed according to the statute applicable at the time of sentence. *Meeks v. Jago,* 548 F.2d 134 (6th Cir.1976), *cert. denied,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). Appellant's proposed "classes" for equal protection analysis receive disparate sentences, but the sentences were imposed on each pursuant to the lawful statutes effective at the time of sentencing.

Minnesota, unlike many other states where guidelines have been adopted, provided resentencing hearings for all prisoners who were sentenced prior to May 1, 1980, and also for those sentenced after that date if their sentence is subsequently reduced by legislative modification of the numbers in the cells of the guidelines grid.

The Post Conviction Procedure Act, Minn.Stat. 590.01, subd. 3 (1984), provides:

> A person who has been convicted and sentenced for a crime committed before

May 1, 1980 may institute a proceeding applying for relief under this chapter upon the ground that a significant change in substantive or procedural law has occurred which, in the interest of justice, should be applied retrospectively, including re-sentencing under subsequently enacted law.

No petition seeking re-sentencing shall be granted unless the court makes specific findings of fact that release of the petitioner prior to the time he or she would be released under the sentence currently being served does not present a danger to the public and is not incompatible with the welfare of society.

Minn.Stat. 244.09, subd. 11a (1984), provides in part:

Any person who is serving a sentence for which there is a modification in the numbers in the cells of the guidelines grid may institute a proceeding applying for retroactive application of the modification and the court may grant a petition for retroactivity *subject to the same procedures, standards and conditions as set forth for post conviction remedies in section 590.01, subdivision 3.*

*Id.* (emphasis added). The appropriate analytical focus should not be the different sentences, but whether each group receives distinct treatment in the area of early release.

It is apparent that both classes of prisoners must meet the same criteria for resentencing. It is also true that all prisoners will be released after serving their sentence, whether or not they are dangerous, and whether or not their release is incompatible with the welfare of society.

Other jurisdictions have addressed the equal protection issue regarding indeterminately sentenced prisoners and those sentenced under guidelines. Under California's statutory scheme in *In Re Henson,* 123 Cal.App.3d 518, 176 Cal.Rptr. 693 (Ct. App.1981), prisoners with life sentences who had received a release date before the effective date of the new guidelines were also entitled to a hearing for release under the guidelines. The earlier date became

their release date. If a lifer had no release date, he/she received only a guidelines hearing. The court found the lifer's liberty interest was "a fundamental interest, second only to life itself." *Id.* at 695 (citation omitted). The purported state interest— the avoidance of administrative inconvenience—could not withstand strict scrutiny. In *Henson,* the due process question arose because the prisoners affected by the arbitrary calendar date were all members of the same class, *i.e.,* those with life sentences.

The Washington Supreme Court characterized physical liberty not as a "fundamental" right, but as a "basic" human right warranting an "intermediate" degree of judicial scrutiny of legislation affecting it. *In re Blair,* 38 Wash.App. 670, 688 P.2d 532, 533 (Ct.App.1984) (citing *State v. Phelan,* 100 Wash.2d 508, 512–14, 671 P.2d 1212 (1983)). The *Blair* court concluded:

Applying this test, we find no denial of equal protection. The State has a substantial interest in changing its sentencing scheme to accommodate current trends in penology.

688 P.2d at 533. The *Blair* court then went on to find that it would be impossible to resentence everyone in prison.

Minnesota has not found resentencing impossible. In a preliminary report on the Minnesota Sentencing Guidelines, the Guidelines Commission stated that:

A review of indeterminate cases by the Minnesota Corrections Board for consistency with the Sentencing Guidelines resulted in adjusting the release date of 95 inmates. Approximately 250 indeterminate cases have been resentenced by district courts under post conviction remedy.

Minn. Sentencing Guidelines Commission, *Preliminary Report on the Development and Impact of the Minnesota Sentencing Guidelines* iv (July 1982). Minnesota has addressed the fairness issue and provided prisoners a solution.

The United States Supreme Court found no denial of equal protection where a New

York law denied state prisoners full good-time credit for the period of their presentence incarceration in a county jail whereas those who obtained bail prior to sentence were allowed good-time credit for the entire period of incarceration. *McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973). The court reasoned that the determination of an optimal time for parole eligibility elicited multiple legislative classification and groupings which required only some rational basis to sustain them. *Id.* at 270, 93 S.Ct. at 1059.

In changing from indeterminate to determinate sentencing, the Minnesota legislature increased the mandatory minimum term for first degree murder. In *Fratzke v. Pung,* 378 N.W.2d 112 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. Jan. 31, 1986), this court held that a rational basis existed for that distinction inasmuch as the legislature is entitled to enact laws imposing stiffer sentences.

The Minnesota Supreme Court has stated:

> * * * the legislature, having the power to define what acts constitute criminal conduct, necessarily retains the power to define the punishment for such acts.

*State v. Osterloh,* 275 N.W.2d 578, 580 (Minn.1978). It necessarily follows that the legislature has the power to prospectively increase or decrease the punishment for a crime.

Bettin was sentenced in a different era under a different sentencing scheme. He was granted a hearing to determine his eligibility for release under the sentencing guidelines, and failed to meet his burden for resentencing. Even though he may serve more time under his sentence than he would have served if sentenced after May 1, 1980, there is no denial of due process or equal protection. To hold otherwise would impermissibly deny to the legislature the power to ever *increase* sentences. This is not within the power of the judiciary.

## DECISION

Appellant did not meet his burden for early release because he failed to show he was not a danger to the public. Appellant has not been denied equal protection because he is serving a longer indeterminate sentence under the old law than he might have served if sentenced after May 1, 1980.

Affirmed.