Filed 3/24/21  P. v. Sisemore CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LLOYD CURTIS SISEMORE,<br><br>    Defendant and Appellant. | F080155<br><br>(Fresno Super. Ct. No. F19901049)<br><br><br>**OPINION** |

-ooOoo-

<u>**THE COURT**</u><sup>*</sup>

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

<sup>*</sup> Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant and defendant Lloyd Curtis Sisemore pleaded no contest to failing to register as a sex offender and admitted two prior strike convictions and six prior prison term enhancements. The court dismissed one prior strike and imposed a second strike term.

On appeal, defendant contends, and the People concede, that four of the prior prison term enhancements must be stricken because of the subsequent amendments to Penal Code[1] section 667.5, subdivision (b). Defendant further argues the court improperly ordered him to pay a restitution fine and other fees without determining his ability to pay such amounts, based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

We will strike the four one-year terms imposed for the enhancements and otherwise affirm.

## FACTS[2]

In 1980, defendant was convicted of rape by force in violation of former section 261, subdivision 2, in Solano County, based on an offense committed in 1977. He was initially committed to Atascadero State Hospital, and then sentenced to three years in prison and ordered to register as a sex offender pursuant to section 290. He was released on parole in January 1981.[3]

In June 1981, defendant was convicted of burglary in Oregon and placed on probation.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] A preliminary hearing was held in this case, but the transcript is not part of the appellate record. We thus rely on the pleadings and probation report for the factual and procedural background for this case.

[3] Former section 261, subdivision 2, previously defined the offense of "forcible" rape. (*People v. West* (1999) 70 Cal.App.4th 248, 254; *People v. Hopkins* (1992) 10 Cal.App.4th 1699, 1702.)

In August 1981, he was found in violation of parole in the rape case and returned to prison. He was released in November 1981.

In December 1981, defendant was convicted of petty theft with a prior conviction and placed on probation. In January 1982, he was again found in violation of parole in the rape case and returned to prison. He was released in May 1982. He again violated parole and was returned to prison and discharged from parole in May 1983.

In 1982 and 1986, defendant was convicted of burglary and theft in Arizona, and burglary in Oregon, and sentenced to prison.

In 1987, defendant was convicted of petty theft with a prior conviction and sentenced to three years in prison.

In 1989, defendant was convicted of burglary and sentenced to four years in prison.

In 1991, defendant was convicted of rape by force in violation of former section 261, subdivision 2, in Fresno County, sentenced to 13 years in prison, and again ordered to register as a sex offender pursuant to section 290. He was released on parole several times, repeatedly violated parole, and returned to prison to finish his term.[4]

_____

[4] "Until its amendment in 1980, former section 261, subdivisions 2 and 3 defined rape as an act of sexual intercourse under circumstances where the person resists, but where 'resistance is overcome by force or violence' or where 'a person is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution ....' [¶] The Legislature amended section 261 in 1980 to delete most references to resistance. (Stats.1980, ch. 587, § 1, p. 1595.) In pertinent part, the statute now defines rape as 'an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: ... [¶] (2) Where it is accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another.' " (*People v. Barnes* (1986) 42 Cal.3d 284, 292, & fns. 6 & 8, fn. omitted.)

The current version of section 261, subdivision (a)(2) defines the offense of rape when "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

In 2003, defendant was convicted of failing to register as a sex offender in violation of section 290, subdivision (g)(2), and sentenced to six years in prison. He was released on parole several times, repeatedly violated parole, and returned to prison to finish his term.

In 2012, defendant was convicted of misdemeanor failing to register his residence in violation of section 290.011, subdivision (a), and given a two-year conditional sentence.

In 2014, defendant was convicted of failing to register in violation of section 290.015, subdivision (a) and sentenced to seven years in prison. He released on parole several times, and repeatedly violated parole and returned to prison to finish his term.

On March 29, 2018, defendant was released on parole. He violated the terms in October and November 2018.

**The current charges**

Jorge Castro, defendant's parole agent, reported his performance on parole was poor and he had violations for absconding, not participating in GPS monitoring, and removing his GPS device. Defendant was referred to the sex offender treatment program and failed to report.

On or about January 15, 2019, defendant's parole agent placed him in a mental health residential placement located on East Magill Avenue in Fresno. Defendant was outfitted with a GPS device. At that time, defendant registered as a sex offender at that address, and signed and initialed the form that stated he understood the registration requirements, and that he must register in person with the law enforcement agency having jurisdiction over his location within five working days upon coming into, or when changing his address or transient location, within any city, county, or city and county in which he is residing or locate.

On January 18, 2019, at approximately 1:18 a.m., defendant removed and disabled his GPS device, and left the residential placement. He never returned, and he never updated his registration address after he left.

Later, on January 18, 2019, a warrant was issued for defendant's arrest for his parole violation.

On January 28, 2019, defendant's parole agent notified an investigator with the Fresno Police Department's sexual offender unit that defendant disabled his GPS device.

On January 28, 2019, the investigator responded to East Magill Avenue, defendant's last known registration location, and contacted the house manager of the residence. The manager stated defendant removed his GPS device and left the residence approximately three days after he had been placed there and had not returned.

On February 6, 2019, defendant was arrested on the parole violation, found in possession of methamphetamine, and admitted that he had used alcohol and methamphetamine.

On February 8, 2019, the investigator again spoke with the house manager, who reported defendant had never returned to the mental health placement. The investigator determined defendant never updated his address after he left the East Magill address.

## PROCEDURAL HISTORY

On July 2, 2019, an information was filed that charged defendant with count 1, a violation of section 290.013, subdivision (a), failure to file a change of address between January 28 and February 6, 2019 as mandated by section 290, based on his prior conviction for violating 261.2 in Solano County in 1980; and his conviction for violating former section 261, subdivision 2, in Fresno County in 1991.[5]

---

[5] Section 290.013, subdivision (a) states: "A person who was last registered at a residence address pursuant to the Act who changes his or her residence address, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, shall, in person, within five working days of the move, inform the law enforcement agency or agencies with which he or she last registered of the move,

It was alleged defendant had two prior strike convictions, based on the same two prior rape convictions, and that he had six prior prison term enhancements. (§ 667.5, subd. (b)).

**Amended information and plea hearing**

On August 12, 2019, the parties advised the court they were ready for trial but also discussing a resolution. The court called for a recess for the parties to further address the matter.

When the court reconvened, it accepted an amended information for filing that corrected the dates alleged for the six prior prison term enhancements: rape in 1980; petty theft with a prior in 1987; burglary in 1989; rape in 1991; and failing to register in 2003 and 2014.

Defense counsel said defendant would plead no contest to count 1 and admit the special allegations as alleged in the amended information. The court acknowledged that defendant was pleading "straight up" to the charges, with a maximum sentence of 31 years to life.

The court stated that it did not believe that the third strike term of 25 years to life, plus six years, "would be a fair and just sentence in this case" given the conduct alleged, but it declined to make any determination about the sentence it would impose under it reviewed the probation report about his prior record and the current offense.

Thereafter, defendant pleaded no contest to count 1, and admitted the two prior strike convictions and six prior prison term enhancements. He was advised that he would be again required to register as a sex offender under section 290, could face a fine up to $10,000, and the court had sole discretion to determine his ultimate sentence.

_____

the new address or transient location, if known, and any plans he or she has to return to California.

**Sentencing hearing**

On September 10, 2019, the court convened the sentencing hearing. Defendant requested the court dismiss the prior strike convictions. The court stated it was "still convinced that the nature of the conduct in this case does not warrant … 31 years to life," and asked for argument on whether to dismiss the prior strike convictions.

Defense counsel asked the court to dismiss at least one of defendant's prior strike convictions because the older offense was committed in 1977, the conviction occurred in 1980, and it was about 40 years old. Counsel further argued the current charge was "a technical violation" and "really an act of omission and not updating his residency," but conceded there was evidence that defendant cut off his GPS monitor and left the residential placement.

The prosecutor requested the third strike term of 25 years to life based on defendant's history of violent sex offenses and recidivism, argued the 1980 conviction was not remote given defendant's numerous probation and parole violations and subsequent convictions, and defendant was a danger to society because he refused to comply with any treatment programs while on probation and parole.

The court rejected defense counsel's assertion that failing to register was a "technical" violation because the section 290 orders exist "so that a person who has shown a history of the same type of violence acts continues to not register and not make their whereabouts known to law enforcement as required by law and when an individual has been placed in custody at least twice for failing to do the very thing he has now admitted to failing to do again. This is extremely troubling."

Defendant addressed the court and said his main problem was drugs, and he intended to register but had "the time calculations messed up in my head."

The court trailed the matter to consider the arguments.

On September 11, 2019, the court reconvened the sentencing hearing, and again found the third strike term of 25 years to life plus six years would be "disproportionate to

the actual conduct of [defendant] in this case." The court recognized that "it would take a significant act of discretion" to dismiss any of the prior strike convictions based on his prior acts of violence and failures to comply with opportunities to obtain help for his alleged drug and/or alcohol problems.

The court decided to exercise its discretion to dismiss the 1980 prior strike conviction, impose the prior prison term enhancements, and sentence defendant to an aggregate term of 12 years in prison. "The Court intends to exercise its discretion notwithstanding the defendant's noncompliance with the very simple terms of registration based upon the age of the 1977 strike conviction."

The prosecutor objected to the court's decision to dismiss one prior strike conviction based on the nature and seriousness of defendant's prior rape convictions.

The court acknowledged the objection but dismissed the 1980 prior strike conviction pursuant to section 1385 because of the age of the offense. The court imposed an aggregate term of 12 years based on the upper term of three years for count 1, doubled to six years as the second strike term, plus six one-year terms for the prior serious felony enhancements.

The court stated it was aware that it had discretion to dismiss the section 667.5, subdivision (b) allegations, but declined to do so "given the defendant's history and his performance on parole when he had been granted parole," and it had already dismissed the prior strike conviction. "It is this Court's intent and hope that the defendant will remain in custody for as long as this term will keep him in custody."

The court ordered defendant to register as a sex offender pursuant to section 290. In a separate matter, the court found defendant violated parole, and imposed time served for that allegation.

The court imposed a $3,600 restitution fine (§ 1202.4, subd. (b)) and suspended the parole revocation fine of $3,600 (§ 1202.45). It also imposed a $40 court security fee (§ 1465.8) and a $30 criminal conviction assessment (Gov. Code, § 70373).

8.

Defendant's counsel asked the court to "suspended those fines, given [defendant's] age and inability to pay." The court denied the motion:

> "Given the period of time for which [defendant] will be in custody, the Court is aware that [defendant] will be in custody, the Court is aware that [defendant] will be allowed to earn money while in custody, so he may be able to make money in order to pay a portion of those fines. I fully understand that he is going into custody and remains in custody now, but he will have the ability to make good on some of those fines that are imposed. So I will decline the invitation to suspend the fines at this point."

On October 15, 2019, defendant filed a notice of appeal.

## DISCUSSION

### I.     The Prior Prison Term Enhancements

Defendant contends, and the People agree, that four of the six prior prison term enhancements must be stricken because of the subsequent amendments to section 667.5, subdivision (b), since the following underlying convictions were not for sexually violent offenses: petty theft with a prior conviction in 1987 (§ 666); burglary in 1989 (§ 459); and failing to register in 2003 and 2014 (§ 290, subd. (g); 290.015, subd. (a)).

Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) amended section 667.5, subdivision (b), to provide that the one-year prior prison term enhancement only applies when there is a prior separate prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (Stats. 2019, ch. 590, § 1.)

"By eliminating the one-year enhancement for prior prison terms that were not imposed for sexually violent offenses, the newly amended section reduces the punishment for such offenses. [¶] Because [the defendant's] conviction is not yet final, he is entitled to the retroactive benefit of the change in law." (*People v. Winn* (2020) 44 Cal.App.5th 859, 872–873.)

In addition, the People state the matter may not be remanded for resentencing, "because the trial court imposed the maximum possible sentence it could after striking

9.

[his] strike conviction, and a sentence could not be reached that was no longer than the original if the court withdrew striking the strike conviction," and "the remedy is for this court to strike the four prior prison term enhancements."[6]

## II. The Restitution Fine, Fees, and Assessments

Defendant contends the court improperly overruled his objections to the order to pay the restitution fine, fees, and assessments even though he did not have an ability to pay these amounts in violation of *Dueñas*.

*Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1167.)[7]

We disagree with the holding in *Dueñas* and find the matter need not be remanded for further findings. As explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles*, at pp. 1068–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and the harm he inflicted, and thus not excessive under the Eighth Amendment. (*Aviles*, at p. 1072.)

---

[6] Defendant's case does not fall within the narrow category of negotiated dispositions addressed in *People v. Stamps* (2020) 9 Cal.5th 685 and *People v. Hernandez* (2020) 55 Cal.App.5th 942, petition for review granted, January 27, 2021, S265739, where the prosecution could withdraw from the plea agreements since the enhancements subject to dismissal were part of the indicated sentence. In this case, the court declined to give an indicated or stipulated sentence at the time of defendant's plea, and the enhancements were not part of the plea agreement.

[7] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

Even if we agreed with *Dueñas*, we would still reject defendant's constitutional claims and find any error arising from the court's denial of his ability to pay objection was harmless beyond a reasonable doubt since defendant has the ability to pay the fines and fees imposed in this case.  (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031; *Aviles, supra*, 39 Cal.App.5th at pp. 1075–1077.)

" ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.]  "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.]  This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody.  [Citation.]' [Citations.]" (*Aviles, supra*, 39 Cal.App.5th at p. 1076.)

We can infer from the instant record that defendant has the ability to pay the aggregate amount of fines and fees from probable future wages, including prison wages. (*Aviles, supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.)  As noted by the trial court, there is nothing in the record to show that defendant would be unable to satisfy the fine and fees imposed by the court while serving his prison term, even if he fails to obtain a prison job.  While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence.  (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

## DISPOSITION

Defendant's admissions and the 4 one-year terms imposed for the section 667.5, subdivision (b) enhancements are stricken based on his convictions for petty theft with a prior in 1987; burglary in 1989; and failing to register in 2003 and 2014.

11.

The trial court shall prepare and forward to all appropriate parties a certified copy of an amended abstract of judgment.

In all other respects, the judgment is affirmed.